## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Criminal Action No.  08-213 (JDB)** |
| **WILLIAM GLAY,** | |
| **Defendant.** | |

## MEMORANDUM OPINION & ORDER

Before the Court is [72] defendant William Glay's motion to suppress tangible evidence seized during a March 6, 2007 search of 12504 Great Park Circle, Apartment #103 in Germantown, Maryland ("Great Park Circle address").  In February 2007, Montgomery County, Maryland police obtained an arrest warrant for Glay charging him with one count of theft, two counts of identity theft, and one count of theft conspiracy.  On March 2, 2007, Detective Susan Mercer filed an application for a warrant to search the Great Park Circle address and attached a six-page affidavit in support of the application.

The affidavit begins by describing two instances in July and September 2006 where suspects had unsuccessfully attempted to pass counterfeit checks.  Mercer Aff. at 1-2.  Evidence obtained from the investigation into those episodes revealed that Glay had supplied the counterfeit checks for the September 2006 attempt.  Id. at 2.  The affidavit then avers that Glay had been observed opening two bank accounts in September 2006 using false identification.  Id. at 2-3.  In December 2006, forged checks were deposited into those accounts, and in January 2007, a bank employee confessed to having provided Glay with signature cards and checks, thus

enabling those forged checks to be created.  Id. at 3.  Another counterfeit check was deposited into Glay's account in February 2007.  Id. at 4.

The affidavit then provides some additional background as to Glay.  In January 2004, he had opened a bank account, providing an address on Alta Oaks Drive.  Id.  The lessee of the Alta Oaks apartment was Emily Jallah, the mother of Glay's child.  Id.  In July 2006, Glay was arrested (for unspecified reasons) driving a car registered to Jallah.  Id.  When arrested, Glay provided two driver's licenses, one from Maryland and one from Virginia.  Id.  Both displayed Glay's photo.  The Maryland license, which listed an address on Dragonfire Way, provided 1950 as his year of birth, whereas the Virginia license provided a 1976 year of birth and an address on Lewis Chapel Circle.  Id.

Next, the affidavit describes surveillance of Glay conducted in February 2007.  The surveillance was conducted at the Great Park Circle address, which Jallah began leasing in December 2006.  Id. at 5.  Two cars, both registered in Jallah's name, were parked in front, and Glay was observed driving both on different days.  Id.  Glay was seen exiting the apartment between 8 and 8:30 a.m., and "[o]n several occasions" Glay was observed coming out with a young child and "leaving as if taking the child to day care on his way to work."  Id.  "These observations indicate that Glay is residing with Jallah at the Great Park Circle address."  Id.  Yet Glay appeared to be using Dragonfire Way as a business address during that same period.  Id.

Mercer sought a warrant to search the Great Park Circle address because of Glay's connection with counterfeiting and forgery and because Glay was observed spending significant amounts of time at the Great Park Circle address.  In averring that there was probable cause to believe that evidence of Glay's criminal activity would be found through a search of the Great

Park Circle address, Mercer stated as follows:

> Given Glay's use of both the Dragonfire Way and Great Park Circle
> address[es], Your Affiant believes each address may be being used
> to further Glay's fraudulent activity by being a location where
> stolen identity information is stored, fraudulent checks,
> identification, etc. are manufactured, and fruits of the crimes of
> identity fraud are hidden. . . .  The above shows that Glay is using
> different identifications and multiple addresses in an attempt to
> conceal his true identity and location.

Mercer Aff. at 5.

The warrant was issued on March 2, 2007, and Glay was arrested on March 6, 2007.  An

hour after he was arrested, the police executed the search warrant at the Great Park Circle address

and seized numerous items.

## ANALYSIS

Glay argues that the fruits of the search of the Great Park Circle address should be

suppressed because the affidavit submitted in support of the search warrant was insufficient to

provide probable cause to believe that evidence of a crime would be found there.  Glay also

argues that the search is not saved by United States v. Leon, 468 U.S. 897 (1984), which held

that suppression is inappropriate when officers reasonably rely on a deficient warrant in good

faith.  Upon review of Mercer's affidavit, the memoranda submitted by the parties, the hearing

held and testimony heard on May 14, 2009, and the entire record herein, Glay's motion to

suppress will be denied.

**I.  Adequacy of Affidavit**

An affidavit in support of a warrant must establish probable cause to believe that a crime

has been committed and that there is a nexus between the place to be searched, the things to be

seized, and the underlying criminal activity.  See 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 3.7(d) (4th ed. 2004); see also Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 307 (1967) ("There must, of course, be a nexus . . . between the item to be seized and criminal behavior.").  Glay argues that the affidavit in support of the search warrant in this case failed to establish this nexus element for two reasons: first, because the affidavit does not establish that Glay was residing at the Great Park Circle address; and second, because the only nexus between Glay's criminal activity and the Great Park Circle address is Mercer's stated belief that the address was being used to store and manufacture counterfeit currency and identity information.

On the first issue, Glay characterizes the affidavit as establishing only that he was at the Great Park Circle address on one occasion.  See Glay's Supp. Mot. at 3 ("Based on the information contained in the affidavit, the only connection was the observation of [Glay] leaving the residence on one morning.").  But the affidavit clearly establishes a greater connection than that.  The affidavit avers that Glay has a long involvement with Jallah, the mother of his child, who officially resides at the Great Park Circle address.  Mercer Aff. at 4.  For several years before the search, Glay used Jallah's car and received mail at her previous residence.  Id.  As to Glay's presence specifically at the Great Park Circle address, the affidavit states that over the course of a month, Glay was observed driving two cars parked at the Great Park Circle home (both registered in Jallah's name) on different days.  Id. at 5.  "On several occasions" he was observed coming out of the apartment between 8 and 8:30 a.m. and bringing his child to day care. Id.  Even if the affidavit does not establish probable cause to believe that Glay was "residing" at the Great Park Circle address, it does establish probable cause to believe that Glay was spending

a substantial amount of time there in February 2007.

The question, then, is whether the affidavit establishes a sufficient nexus between Glay's criminal activity and his presence at the Great Park Circle address.  As discussed above, the only nexus that the affidavit sets forth is as follows:

> Given Glay's use of both the Dragonfire Way and Great Park Circle address[es], Your Affiant believes each address may be being used to further Glay's fraudulent activity by being a location where stolen identity information is stored, fraudulent checks, identification, etc. are manufactured, and fruits of the crimes of identity fraud are hidden.

Mercer Aff. at 5.  Whether or not an affiant's averment, by itself, is sufficient to establish that there is probable cause to believe that evidence of a crime will be found at a specific location varies from circuit to circuit.  Compare United States v. Crews, 502 F.3d 1130, 1136-37 (9th Cir. 2007) (holding that a nexus may be established through an officer's "statements that his experience has shown him that further evidence of possession of firearms is often found at a suspect's residence"), with United States v. Schultz, 14 F.3d 1093, 1097 (6th Cir. 1994) (holding that an officer's training and experience "cannot substitute for the lack of evidentiary nexus"), and United States v. Rosario, 918 F. Supp. 524, 530 (D.R.I. 1996) (acknowledging affiant's "extensive training and expertise" but holding that "[t]o permit a search warrant based solely upon the self-avowed expertise of a law-enforcement agent, without any other factual nexus to the subject property, would be an open invitation to vague warrants authorizing virtually automatic searches of any property used by a criminal suspect").

This Court, however, is required to apply the law of this Circuit, where the nexus may be established without an independent evidentiary basis -- i.e., the nexus may be established by an

affiant's statement that her training and experience provides probable cause to believe that there is a nexus between criminal activity and the place to be searched.  For example, in United States v. Thomas, 989 F.2d 1252 (D.C. Cir. 1993), the challenged affidavit stated that the defendant had been observed selling drugs in Washington, D.C. on the 900 block of N Street, N.W., and the magistrate judge authorized a search of the defendant's home on the 500 block of 51st Street, N.E.  The court found the affidavit adequate, holding that "observations of illegal activity outside of the home can provide probable cause for the issuance of a search warrant . . . even in the absence of an allegation that any illegal activity occurred in the home itself."  Id. at 1254.  And if a defendant has multiple residences, observations of illegal activity outside the home can provide probable cause to search each dwelling.  United States v. Johnson, 437 F.3d 69, 71-72 (D.C. Cir. 2006).

Under Thomas and Johnson, the affidavit at issue here was sufficient to establish probable cause to believe that there was a nexus between Glay's criminal activity and the Great Park Circle address.  As discussed above, the affidavit establishes probable cause that Glay was spending a substantial amount of time at the Great Park Circle address.  Although the affidavit only establishes the nexus between the criminal activity and that location through Mercer's training and experience, the D.C. Circuit has held that an independent evidentiary basis is not required in similar circumstances.  See Thomas, 989 F.2d at 1254.

## II.  Good Faith Exception

The good faith exception established in Leon provides an additional basis for denying Glay's suppression motion.  Even if the warrant had been based on an insufficient affidavit, good faith reliance on a warrant defeats suppression as long as the reliance was objectively reasonable.

<u>Leon</u>, 486 U.S. at 921.  The government bears the burden of establishing that agents' reliance

upon a warrant was objectively reasonable.  <u>See</u> <u>United States v. Corral-Corral</u>, 899 F.2d 927,

932 (10th Cir. 1990).  This burden is not difficult to meet -- "searches pursuant to a warrant will

rarely require any deep inquiry into reasonableness for a warrant issued by a magistrate normally

suffices to establish that a law enforcement officer has acted in good faith in conducting the

search."  <u>Leon</u>, 468 U.S. at 922 (citing <u>Illinois v. Gates</u>, 462 U.S. 213, 259 (1983), and <u>United

States v. Ross</u>, 456 U.S. 798, 823 n.32 (1982) (internal quotations omitted)).  Nonetheless, courts

have identified four instances where reliance is not objectively reasonable:

> [F]irst, if the issuing magistrate was misled by information in an
> affidavit that the affiant knew was false or would have known was
> false except for his reckless disregard of the truth; second, if the
> issuing magistrate wholly abandoned his judicial role; third, if the
> affidavit was so lacking in indicia of probable cause as to
> render official belief in its existence entirely unreasonable, or in other
> words, where the warrant application was supported by nothing
> more than a "bare bones" affidavit; and, fourth, . . . the warrant
> may be so facially deficient -- <u>i.e.</u>, failing to particularize the place
> to be searched or the things to be seized.

<u>United States v. Weaver</u>, 99 F.3d 1372, 1380 (6th Cir. 1996) (citing <u>Leon</u>, 468 U.S. at 905, 914-

15, 923 (internal quotations omitted)).

Here, the search of the Great Park Circle address was conducted pursuant to a warrant and

does not fall into any of the four categories set out above for assessing the reasonableness of

reliance.  As to the first category, Glay has not alleged that any of the information in the affidavit

was false.  Nor does the second category apply, because there has been no allegation that the

judge issuing the search warrant was not neutral or detached.  The third category is inapplicable

because, as discussed above, the affidavit was not "lacking in indicia of probable cause" and

certainly was not so lacking "as to render official belief in its existence entirely unreasonable." Id.  And, finally, the fourth category does not apply here because the search warrant particularized the place to be searched -- the Great Park Circle address -- and the items to be seized.  See Mercer Aff. Attachment A.

One final aspect of Glay's motion merits brief discussion.  At the May 14, 2009 evidentiary hearing, the government presented Special Agent Ryan Petrasek as its sole witness. Counsel for Glay expressed concern that the government had offered neither Mercer nor the agents who executed the search warrant as witnesses.  See Transcript of May 14, 2009 Hearing at 43-44.  Glay now argues that the government's failure to present Mercer or the agents who conducted the search precludes him from testing whether the police acted in good faith.  See Glay Supp. Mot. at 8-9.  But mere speculation that Mercer or the searching officers may not have acted in good faith is not sufficient to alter the analysis here.  See Franks v. Delaware, 438 U.S. 154, 155-56 (1978) (holding that a defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" before testimony from the affiant is necessary). The test for good faith under Leon is objective and hence "does not turn on the subjective good faith of individual officers."  Illinois v. Krull, 480 U.S. 340, 355 (1987) (citing Leon, 468 U.S. at 919 n.20).  Here, as discussed above, the searching officers' reliance on the warrant was objectively reasonable, and therefore testimony from Mercer or the agents conducting the search was not necessary.

Accordingly, it is hereby **ORDERED** that Glay's motion to suppress is **DENIED**.

_____/s/_____
JOHN D. BATES
United States District Judge

Date: June 30, 2009